UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| Christopher Morris and | ) | | |
| Latonia Morris, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | Case No. 22-cv-2764 | |
| v. | ) | | |
| | ) | Hon. Jorge L. Alonso | |
| BorgWarner, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant BorgWarner's motion for summary judgment [112] against Plaintiffs Christopher and Latonia Morris. For the following reasons, the Court grants Defendant's motion as to Plaintiffs' wrongful termination and retaliation claims, denies the motion as moot as to Plaintiffs' terms or conditions of employment claims, and denies the motion as to Plaintiffs' hostile-work environment claims.

### Preliminary Matters

Defendant argues that the Court should disregard certain portions of Plaintiffs' Local Rule 56.1 statement of additional fact and response to Defendant's statement of facts because Plaintiffs failed to comply with Local Rule 56.1. District courts may strictly enforce compliance with Local Rule 56.1. *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("[A]s an initial matter, Ammons' argument that

1

the district court erred in striking his responses because he *substantially* complied with Rule 56.1 is inapt. Substantial compliance is not strict compliance." (emphasis in original)).

Plaintiffs have failed to comply with Local Rule 56.1 in three ways. First, Plaintiffs either denied or asserted a lack of knowledge to certain facts without citing record evidence. Such responses violate Local Rule 56.1(e)(3) and the Court deems the facts they relate to admitted to the extent that Defendant has provided support for the facts in the record. *See, e.g.*, *Gaughan v. Eggers*, No. 16 C 11352, 2018 WL 6621396, at *2 (N.D. Ill. Dec. 18, 2018).

Second, Plaintiffs responded to certain facts with general references to lengthy documents or potential sources of the information without providing the page, paragraph, or in some instances even the document in which the information could found. The Court deems these facts admitted to the extent they are supported by competent evidence. *Ammons*, 368 F.3d at 817–18 ("In addition, where a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial. Citations to an entire transcript of a deposition or to a lengthy exhibit are not specific and are, accordingly, inappropriate. A court should not be expected to review a lengthy record for facts that a party could have easily identified with greater particularity.").

Third, and finally, Plaintiffs supported certain of their facts in their statement of additional facts only through citation to their unverified complaint. Such assertions are properly disregarded as they do not cite competent evidence. *Fellers v. Potter*, No. 09-CV-1137, 2009 WL 4679505, at *1 n.1 (N.D. Ill. Dec. 7, 2009) (explaining that an unverified complaint is not competent evidence at summary judgment).

Nonetheless, the Court will consider a fact to be properly disputed or provided when the

Court has located support for Plaintiffs' position in its analysis of the record that the Court conducted in resolving the motion for summary judgment or when properly provided in Plaintiffs' statement of additional facts. The Court does this due to the preference to, where possible, decide disputes on the merits. *See generally Sullers v. Int'l Union Elevator Constructors, Loc. 2*, No. 24-1719, 2025 WL 1775365, at *4 (7th Cir. June 27, 2025) (recognizing the preference for resolving disputes on the merits). The Court, however, does not purport to be able to do so for each of Plaintiffs' purported facts or disputes of fact because it is not required to and because it would be a tremendous strain on judicial resources due to the size of the record advanced by the parties. *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) ("Neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." (cleaned up)).

## Background

The following facts come from the statements and responses the parties have submitted under Local Rule 56.1 and the supporting exhibits. They are undisputed[1] or presented in the light most favorable to Plaintiffs, the non-movants.

Mr. and Mrs. Morris were employed by Defendant, a manufacturer of propulsion systems and technologies. In 2021, Mr. Morris was transferred to the Multi-Segmented Bonding Division ("MSBD") to serve as a team lead—the same department where Mrs. Morris worked. As a team lead in MSBD, Mr. Morris reported to two production supervisors, who in turn reported to Area Manager Jose La Santa. Starting around August 2021, Mr. Morris was the only team lead in MSBD, meaning that Mrs. Morris was assigned work by her husband.

At all relevant times, Matthew McConahy served as Defendant's Director of Human

---

[1] Or in some instances they are not properly disputed, as discussed above.

Resources. Shortly after August 2021, employees began to submit complaints to Defendant's HR department regarding Mr. and Mrs. Morris. The complaints alleged that the two engaged in bullying and harassment and argued with one another, that Mr. Morris showed favoritism to Mrs. Morris, and that Mrs. Morris was insubordinate. Upon receiving these complaints, McConahy asked Marissa Wilt, a Human Resources Generalist, to investigate them. Wilt conducted interviews with several individuals and obtained written statements that were consistent with the complaints. Wilt ultimately issued a report which concluded that Mrs. Morris "makes female associates uncomfortable on the production floor" and had been "insubordinate, uncooperative with fellow technicians, and argumentative with [Mr.] Morris on the production floor" and that Mr. Morris has "poor associate relations with some members of his team. (ECF No. 115-21 at 2–3.) Defendant made some attempts to address the problem by having Plaintiffs work on different shifts and not interact while at work, including through a signed policy outlining the steps they should take to remain separated, but continued to receive complaints about the two.

Ultimately, McConahy made the decision to terminate Mr. and Mrs. Morris effective November 16, 2021. He decided to terminate Mr. Morris for the following reasons: the first-hand accounts that he was harassing, intimidating, and bullying employees; past complaints made against Mr. Morris years prior; his understanding that Mr. Morris failed to create separation between himself and Mrs. Morris; and a belief that Mr. Morris was engaging in favoritism with Mrs. Morris. McConahy decided to terminate Mrs. Morris because he believed the investigation established she was insubordinate, argued with Mr. Morris on the production floor, and she harassed, intimidated, and bullied other employees. Like with Mr. Morris, he considered a past complaint against Mrs. Morris, for which she was disciplined, which he considered to concern

4

similar behavior.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Id.* at 248.

## Discussion

For the reasons that follow, the Court grants summary judgment in Defendant's favor on Plaintiffs' marital discrimination claims, claims for wrongful termination, and claims for retaliation. The Court does not reach the merits of Plaintiffs' purported terms or conditions of employment claims because it was not raised in their complaint. Lastly, the Court denies summary

judgment as to Plaintiffs' hostile-work environment claim.

## I.     Marital Status Discrimination

Plaintiffs argue that Defendant engaged in marital status discrimination by treating them differently than other similarly situated non-married employees. Defendant argues that it is entitled to summary judgment on this claim because it terminated Mr. and Mrs. Morris  based on the dynamic of their spousal relationship, not their marital status. The Court agrees with Defendant and grants summary judgment in its favor on Plaintiffs' marital discrimination claims.

The Illinois Human Rights Act ("IHRA") prohibits discrimination on the basis of an individual's marital status. 775 ILCS 5/1-102(A). The IHRA defines marital status to mean "the legal status of being married, single, separated, divorced, or widowed." 775 ILCS 5/1-103. Illinois courts, including the Illinois Supreme Court, have held that discrimination based on the identity of an employee's spouse does not constitute marital-status discrimination. *Boaden v. Dep't of L. Enf't*, 171 Ill. 2d 230, 238 (1996) ("We agree with the appellate court below that the statutory definition of marital status discrimination does not encompass policies based on the identity of one's spouse. As defined under the Act, prohibited marital status discrimination is discrimination based on an individual's 'legal status' as married, single, separated, divorced, or widowed. In our view, a policy prohibiting spouses from working together presents an entirely different kind of harm than discrimination based on an individual's legal status."); *Urb. v. ITI Intermodal, Inc.*, 2025 IL App (3d) 240496-U, ¶ 30 ("[W]e find *Boaden*'s interpretation of the Act's relevant provisions unmistakably clear: marital status discrimination does not encompass employment actions that are taken based on the identity of a spouse.").

Here, Plaintiffs allege discrimination on the basis that they are married to one another, were

forced to work together, faced certain limitations when working together, and their termination ultimately was caused by their marriage to one another. (ECF Nos. 22 at Counts V and VI; 138 at 25 (explaining that Plaintiffs' claims arise from limitations on how they must interact because they are married to one another).) The Court agrees that Plaintiffs' claims for marital status discrimination are not legally cognizable because they argue that the identity of their spouse caused adverse treatment, not that they were discriminated against because they were married more generally. Accordingly, the Court grants summary judgment to Defendant on Plaintiffs' marital status discrimination claims.

## II.     Wrongful Termination

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). One manner for a plaintiff to survive summary judgment on a Title VII claim is through the *McDonnell-Douglas* burden-shifting framework. *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 601–02 (7th Cir. 2020). A plaintiff also survives summary judgment on an employment discrimination claim if they provide direct or circumstantial evidence "that would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 602 (quotations omitted). Where, as here, an employer alleges a termination was due to job performance, "the *Mcdonnell Douglas* and *Ortiz* frameworks come together" and the key issue is whether the decision to terminate the Plaintiffs based on job performance was pretext to cover a discriminatory motive. *Napier v. Orchard Sch. Found.*, 137 F.4th 884, 892 (7th Cir. 2025); *see also Powell v. Bd. of Educ. of City of Chicago,* No. 22 C 1146,

2025 WL 1092790, at *8 (N.D. Ill. Apr. 11, 2025) ("The record does not reflect that Plaintiff's race played any role in Defendant's decisionmaking. Whether analyzed under *McDonnell Douglas* or *Ortiz*, that means Plaintiff cannot establish pretext.") Because there is no evidence that the decisionmaker's decision to fire Plaintiffs was on the basis of their race or pretextual, the Court grants summary judgment in Defendant's favor on Plaintiffs' wrongful termination claims.

Here, Defendant argues that Mr. and Mrs. Morris were terminated as a result of an HR investigation into their job performance. The investigation began when McConahy, the Director of Human Resources, received multiple complaints claiming that Mr. Morris showed favoritism to his wife in machine assignment, Mrs. Morris was insubordinate to Mr. Morris without repercussion, Mrs. Morris followed Mr. Morris and intimidated female employees he spoke to, Mr. and Mrs. Morris had altercations at work, and Mr. Morris retaliated against employees who complained about him. (ECF No. 115 ¶ 29.) As a result, he instructed Human Resources Generalist Wilt to investigate the complaints. (ECF No. 115 ¶ 29.) Wilt investigated the complaints, including through interviews and through obtaining written statements from the complaining parties and individuals who the complaining parties indicated would have relevant information.[2] (ECF No. 142 ¶ 102.) Wilt believed those who spoke with her on their own accord were truthful. (*Id.* ¶ 103.) Mr. and Mrs. Morris were not interviewed during the investigation. Wilt ultimately authored a report that found that (1) Mrs. Morris "makes female associates uncomfortable on the production floor" and had "been insubordinate, uncooperative with fellow technicians, and argumentative with [Mr.] Morris on the production floor" and (2) that Mr. Morris had "poor associate relations with some members of the team." (ECF No. 115-21 at 2–3.)

---

[2] Plaintiffs spend much time (often improperly, as discussed above) disputing the veracity of the complaints, but do not dispute the complaints were received by Defendant.

As a result of this investigation, McConahy decided to terminate Mr. Morris and Mrs. Morris.[3] (ECF No. 127 at 78:16–24, 105:23–106:12, 109:2–3.) Specifically, McConahy believed the evidence that Mr. Morris was harassing and intimidating, bullied employees, failed to follow instructions about separation from his wife at work, showed favoritism to his wife, and failed "to respond to training and coaching about changing [his] behavior." (ECF No. 127 at 77:16–78:23, 162:19–21; *see also* ECF No. 126 at 22:19–23:14, 32:2–8, 54:16–55:6.) McConahy also factored in previous complaints against Mr. Morris which he believed involved similar conduct. (ECF No. 127 at 78:16–22.) McConahy discussed his decision, at least with respect to Mr. Morris, with Wilt and Scott Crouthamel, a Senior Operations Manager. (ECF No. 80:16–81:4.) Similarly, he terminated Mrs. Morris because he believed the investigation established she was insubordinate, argued with Mr. Morris on the production floor, and she harassed, intimidated, and bullied other female employees. (ECF Nos. 126 at 57:3–19, 64:22–65:13, 73:6–15, 84:11–14, 97:4–6, 97:16–19; 127 at 106:2–6, 136:8–19, 137:3–17, 147:8–148:2, 159:12–18, 161:23–162:2.) He considered a past complaint against Mrs. Morris, for which she was disciplined, which he considered to concern similar behavior. (ECF No. 126 at 84:20–85:18, 86:1–4; 127 at 106:9–12.)

## A.  The Alleged Irregularity of the Investigation

Many of the Plaintiffs' arguments regarding pretext concern the alleged irregularity in the investigation that led to their termination. For instance, Plaintiffs point to the facts that they were terminated four days apart despite the allegations against them being the same, McConahy never conducted interviews himself and instructed Wilt not to interview the Plaintiffs, Wilt believed a

---

[3] Plaintiffs improperly dispute this fact because they provide no evidence that McConahy was not the decisionmaker. (ECF No. 143 ¶¶ 119, 147.) Because the evidence cited by the Defendants supports the proposition advanced and the Court has identified no evidence undercutting the allegation, including in Plaintiffs' statement of additional facts, it is deemed admitted that McConahy was the decisionmaker.

suspension and not a termination was warranted, and Plaintiffs could refute the allegations against them, including through information provided during the investigation. (ECF No. 138 at 15–16.) However, these complaints go to the wiseness of McConahy's ultimate decisions, not to whether he believed the basis for his decision, and as such are not relevant to establish pretext. *Cunningham v. Austin*, 125 F.4th 783, 790 (7th Cir. 2025) ("When an employer honestly believed it promoted the best candidate, its reasoning is not pretext, even if its decision was inaccurate, unfair, foolish, trivial, or baseless." (cleaned up)); *Brooks v. Avancez*, 39 F.4th 424, 440 (7th Cir. 2022) (holding "the pivotal question" is whether the decisionmaker believed the complaints); *Napier*, 137 F.4th at 895 ("Whether this was wise is, again, not a question of pretext, which looks only to veracity. We are strictly in the business of reviewing whether there is evidence that Orchard's employment decision was discriminatory." (cleaned up)); *Joll v. Valparaiso Community Sch.*, 953 F.3d 923, 933 (7th Cir. 2020) ("We have said time and again (in more than one hundred reported opinions, by our count) that we are not a super-personnel department that will substitute our criteria for an employer's for hiring, promoting, or disciplining employees."); *Liu v. Cook Cnty.*, 817 F.3d 307, 316 (7th Cir. 2016) ("Even if an employer's decision is mistaken, there is no pretext so long as the decision-maker honestly believed the non-discriminatory reason."); *Yindee v. CCH Inc.,* 458 F.3d 599, 602 (7th Cir.2006) ("It is not enough to demonstrate that the employer was mistaken, inconsiderate, short-fused, or otherwise benighted; none of those possibilities violates federal law. Poor personnel management receives its comeuppance in the market rather than the courts." (citations omitted)). Without any evidence suggesting that McConahy did not believe the investigation materials presented to him, the Court cannot determine his decision to terminate Plaintiffs was pretextual. Accordingly, the Court cannot find that the alleged irregularities in the

10

investigation would allow a reasonable jury to conclude the decision to terminate Plaintiffs was pretextual.

### B. Cat's Paw Theory

Mr. and Mrs. Morris also argue that the bias of La Santa should be imputed to McConahy's decision to terminate Plaintiffs. "Under the cat's paw theory of liability, when a biased subordinate lacks decision-making power to fire an employee, but uses a formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action, [courts] will consider the biased subordinate's actions as direct evidence of discrimination." *Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) (cleaned up). To survive summary judgment on such a theory, the Plaintiff must provide evidence that "a non-decision-making employee with discriminatory animus provided factual information or input that may have affected the adverse employment action" and that the employee's actions "were a proximate cause of the adverse employment action." *Shreffler v. City of Kankakee, Illinois*, No. 21-3376, 2024 WL 1826976, at *6 (7th Cir. Apr. 26, 2024) (cleaned up) (quoting *Miller v. Polaris Lab'ys, LLC*, 797 F.3d 486, 490 (7th Cir. 2015) and *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 462 (7th Cir. 2021)).

Plaintiffs argue that La Santa was the proximate cause of their termination because he caused Mr. Morris to be transferred to the department where he supervised his wife. (ECF No. 138 at 14–15.) However, this theory does not support a cat's paw theory of discrimination because it does not amount to "factual information or input that may have affected the adverse employment action." *Shreffler*, 2024 WL 1826976, at *6; *see also Anderson v. Nations Lending Corp.*, 27 F.4th 1300, 1306 (7th Cir. 2022) (declining to apply a cat's paw theory where an individual alleged to have animus initiated the process leading to the plaintiff's termination but there was "no evidence

11

to suggest that HR acted as the 'cat's paw' or 'rubber stamp' for [that individual] in the conduct of the investigation."). Accordingly, La Santa's decision to transfer Mr. Morris does not give rise to a cat's paw theory of liability.

To the extent that Plaintiffs are arguing that Mr. La Santa played a role in the investigation which led to their termination (an argument curiously not raised in their response but alluded to in their 56.1 statements) their argument fares no better. Plaintiffs have provided no evidence that McConahy essentially rubber stamped La Santa's decision to terminate Plaintiffs. *Anderson*, 27 F.4th at 1306. Plaintiffs have also not provided evidence that La Santa caused the complaints that started the investigation to be made, and McConahy relied on those complaints, including how they corroborated one another, in reaching his decision. *Vesey*, 999 F.3d at 462 ("[I]f an employer's decision to take an adverse employment action did not rely on the credibility of a biased supervisor—that is, the employer believed it had independently sufficient reasons, such as corroboration of the allegations, to take the adverse action—then the employee's cat's paw theory will fail for lack of proximate cause."); *Brooks*, 39 F.4th at 440 (holding that even where a biased subordinate's complaint began the process of an investigation, unlike here, the cat's paw theory does not apply where management "conducted its own independent investigation and evaluation of [plaintiff's] employment history" before termination).

And while La Santa recommended that Mr. Morris be fired to Crouthamel, who McConahy spoke with in the course of deciding the appropriate outcome, (ECF No. 120 at 96:9–14), there is no evidence that this recommendation "singularly influenced [McConahy] to terminate [Plaintiffs]." *Brooks*, 39 F.4th at 440. In fact, McConahy had decided to terminate Plaintiffs *before* he spoke to Croumathel and spoke to him only to see if his decision was sound. (ECF No. 127 at

80:16–81:4, 84:22–24.) And Plaintiffs have provided no evidence suggesting that La Santa directly recommended termination to McConahy. (ECF No. 127 at 211:15–17 (McConahy testifying that La Santa did not corroborate the allegations against Mr. Morris).) Absent any evidence that La Santa provided input to the decisionmaker that was actually relied on in reaching the result, there is no basis to impute La Santa's alleged bias onto McConahy, the decisionmaker, and Plaintiffs cat's paw theory of liability fails, and the suggestive comments allegedly made by La Santa cannot be used to establish pretext.

### C. Similarly Situated Comparators

The Court also considers whether similarly situated individuals were treated more favorably than the Plaintiffs in considering whether the decision to fire Plaintiffs was pretextual. *Napier*, 137 F.4th at 894 ("We consider this evidence not to evaluate whether Napier made a prima facie case under *McDonnell Douglas*, but rather because comparator evidence and selective enforcement of an employer's rules are relevant to a pretext analysis." (cleaned up)). The question is whether the comparator is "directly comparable to the plaintiff in all material respects." *Id.* at 895. This generally requires a plaintiff to show that the comparator "(1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 894 (cleaned up). Further "to be similarly situated, a [comparator] must have been treated more favorably by the same decisionmaker that fired the [plaintiff]."). *Ellis v. United Parcel Serv., Inc.*, 523 F.3d 823, 826 (7th Cir. 2008).

While Mr. Morris identifies no similarly situated individual, Mrs. Morris identified Chris Novak. She alleges she reported Chris Novak to HR because he followed her, harassed her, and

13

made her uncomfortable, and he was not terminated. From the limited information provided, the Court cannot hold that Novak is an appropriate comparator because, even assuming that the two had the same supervisor, were subject to the same standards, and that Mrs. Morris' testimony is admissible, Plaintiffs provide no evidence that, like Mrs. Morris, he had been previously disciplined by Defendant. *Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 662 (7th Cir. 2016) ("An employee who does not have a similar disciplinary history and performance record as the plaintiff is not similarly situated."). Further, Mrs. Morris was accused of insubordination, and Plaintiffs have not provided evidence that similar accusations were made against Novak. In addition, even if Novak was otherwise an appropriate comparator, there is no evidence that he was treated more favorably by McConahy, the decisionmaker, because Plaintiffs have provided no evidence that McConahy was aware of the complaint against Novak. Without such knowledge, McConahy could not have treated Novak in any way with respect to his conduct, let alone more favorably than Mrs. Morris. And to the extent the complaint against Novak was provided to a different decisionmaker, that too would make Novak an unsuitable comparator. *Ellis*, 523 F.3d at 826 ("But most of Ellis's purported comparators are not similarly situated to him because they were not subject to the same decisionmaker as Ellis when they purportedly violated the policy."). For these reasons, Plaintiffs have not established that pretext has been established through the identification of a similarly situated comparator.

And without any evidence of pretext for all of the reasons laid out above, a reasonable jury could not conclude Plaintiffs' termination was racially motivated, and the Court grants summary judgment in Defendant's favor as to Plaintiffs' wrongful termination claims.

### III.    Retaliation

14

Plaintiffs also argue that Defendant retaliated against them for past and threatened complaints regarding La Santa's allegedly discriminatory conduct relating to their race and marriage. Title VII prohibits employers from taking adverse actions against employees "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). "In order to demonstrate that a defendant was motivated to retaliate based on the plaintiff's protected activity, the plaintiff must first produce evidence that the defendant had actual knowledge of the protected activity. It is not sufficient that a decision-maker could have or even should have known about the employee's complaint." *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512–13 (7th Cir. 2021) (citations omitted). Plaintiffs argue in their response brief that they reported to La Santa, Hanna, and Wilt that they were experiencing discrimination and a hostile-work environment. (ECF No. 138 at 26.) However, in their statement of facts, Plaintiffs do not allege they made a report to Wilt, and the Court is aware of no evidence corroborating the assertion. (*See generally* ECF No. 139.) And they provide no evidence that McConahy—who as discussed above made the decision to terminate Plaintiffs— knew of their complaints. In fact, the evidence before the Court indicates he did not. (ECF Nos. 124 at 123:22–25; 126 at 48:6–7; 127 at 56:14–58:7, 59:18–21; 127 at 188:2–8, 200:2–4; 155 ¶ 4.) And the Court is not persuaded that the cat's paw theory bridges the gap. Specifically, as discussed above, Plaintiffs have provided no evidence that La Santa had sufficient influence over McConahy's decision to terminate the Plaintiffs, even if La Santa told Plaintiffs that reporting his conduct would lead to their termination. Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiffs' retaliation claims.

15

## IV.    Terms or Conditions of Employment

Defendant has also moved for summary judgment on Plaintiffs' purported claims that La Santa's decision to transfer Mr. Morris to the same department as Mrs. Morris constituted terms or condition discrimination. Plaintiffs did not respond to this argument in their response brief. In attempting to understand the basis for Plaintiffs' terms or conditions claim, the Court re-read the operative complaint and sees no allegation that the decision to transfer Mr. Morris was racially motivated or other indicia that Plaintiffs have brought a terms or conditions of employment claim. (*See, e.g.*, ECF No. 22 at Count I ¶ 12 (framing Mr. Morris' racial discrimination claim as based on his termination and the allegedly hostile-work environment). As such, no such claims exist in this litigation. *ExactLogix, Inc. v. JobProgress, LLC*, 508 F. Supp. 3d 254, 270 (N.D. Ill. 2020) ("Although we are at the summary judgment stage, the Court still looks at the complaint to determine Plaintiff's claims." (citing *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992))). And even if there were such a claim, a reasonable jury could not conclude that Mr. Morris' transfer to MBSD was racially motivated where he concedes that the decision was not made on the basis of his race. (*See, e.g.*, ECF Nos. 143 ¶ 131 ("[T]he move to MSBD was made so that Mr. Morris would implement his shift design in the department because it was so successful in the departments Mr. Morris had been the Team Leader of."); 154 ¶ 86 ("La Santa moved Mr. Morris to MSBD because he worked hard and because he was a good worker.").)

## V.    Hostile-Work Environment

"An employer creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hambrick v.*

16

*Kijakazi*, 79 F.4th 835, 842 (7th Cir. 2023) (quotations omitted). Specifically, to succeed on a hostile-work-environment claim "[a] plaintiff must demonstrate that (1) she was subject to unwelcome harassment; (2) the harassment was based on disability or age or another protected category; (3) the harassment was sufficiently severe or pervasive, both subjectively and objectively, so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Brooks*, 39 F.4th at 441. Defendant argues that Plaintiffs have not met his burden to establish a hostile-work environment because they have not established that the harassment they faced was sufficiently severe or pervasive.

Summary judgment should be granted on this basis only if no reasonable jury could find that the conduct at issue was either severe or pervasive. *Equal Emp. Opportunity Comm'n v. Costco Wholesale Corp.*, 903 F.3d 618, 621 (7th Cir. 2018). The determination is not subject to a "mathematically precise test" but instead depends on the totality of the circumstances. *Id.* at 625. The circumstances considered include "the frequency of the discriminatory conduct, how offensive a reasonable person would deem it to be, whether it is physically threatening or humiliating conduct as opposed to verbal abuse, whether it unreasonably interferes with an employee's work performance, and whether it was directed at the victim." *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 868 (7th Cir. 2013). "Harassment need not be severe *and* pervasive to impose liability; one or the other will do." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000) (emphasis in original). Ultimately, the Court finds that Plaintiffs have adduced sufficient evidence[4] to survive summary judgment on their hostile-work environment claim.

---

[4] Certain of these facts were not properly supported in Plaintiffs' 56.1 statement, but the Court has found support for the allegations in the record, and as discussed above, considers them to be properly supported in an effort to reach the merits of Plaintiffs' claims.

### A. Mr. Morris

Starting with Mr. Morris, a reasonable jury could find that the conduct he faced was severe. The Seventh Circuit has held that "[a] one-time use of the epithet can in some circumstances warrant Title VII liability" and that the N-word is "an egregious racial epithet." *Scaife v. United States Dep't of Veterans Affs.*, 49 F.4th 1109, 1116 (7th Cir. 2022). The use of the N-word weighs more heavily in finding harassment is severe when it is "stated directly to the plaintiff" or when it is used by a supervisor. *Id.* at 1116–1117. Over the course of Mr. Morris' time in MSBD, he alleges he was subject to frequent racial insults by La Santa, including La Santa's use of the N-word. For instance, when the two first met, La Santa remarked that he was "surprised" Mr. Morris was Black in light of his good attendance and told him to "tell all the black people that have that lazy, entitlement mentality that their time is up." (ECF No. 117 at 88:7–22). La Santa also called Mr. Morris slurs. (*Id.* at 90:19–91:3 (testifying that La Santa would call Mr. Morris into his office and berate him with slurs); 31:4–9 (testifying that La Santa's use of slurs was frequent during Mr. Morris' last year at Defendant, which led him to be stressed every day); 101:15–102:18 (testifying that Mr. Morris told La Santa that a Hispanic coworker told him that "his people don't have to listen to Mr. Morris' people, and La Santa responded Hispanic "men feel like Black men are still like [N-words]" because "they can't control their women."); ECF No. 129 at 289:2–4 (testifying that La Santa "was constantly issuing out these racial slurs.").) On the facts of this case, a reasonable jury could conclude that this harassment was severe, and Defendant's motion for summary judgment on this claim is denied.[5]

---

[5] Defendant also argues that Mr. Morris' failure to report these statements to the McConahy or through the "ethics/compliance hotline" "militates strongly against a conclusion that Mr. LaSanta subjected him to any sort of harassment." (ECF No. 113 at 9.) Defendant cites no case law for the proposition that this changes the outcome here, and the argument asks the Court to improperly make credibility determinations at this summary judgment stage.

### B.  Mrs. Morris

Because a reasonable jury could conclude that the alleged harassment of Mrs. Morris was pervasive, the Court does not grant summary judgment on her hostile-work environment claim. While Mrs. Morris does not allege that La Santa directed racial slurs at her, she alleges that Mr. Morris informed her of the way that La Santa spoke to him, which caused her distress. (ECF Nos. 125 at 154:17–22; 124 at 22:21–23:4). Further, Mrs. Morris alleges that La Santa frequently used racially charged language, like "you people" to refer to Black people in her presence. (ECF Nos. 124 at 23:5–8, 24:1–4; 125 at 187:3–13, 307:19–308:1, 315:8, 316:24–317:3.) In addition, Mrs. Morris alleges that she reported to La Santa that she was being harassed daily by two coworkers, and La Santa did nothing to stop the harassment for some time as to one of the coworkers, and did not stop the harassment from the other coworker. (ECF Nos. 124 at 70:16–71:10, 113:21–25, 136:11–139:6; 125 at 61:17–19, 62:9–64:6, 64:20–65:10, 69:3–71:4, 72:10–74:17, 152:1–9, 159:1–24, 295:9–17, 304:4–11.) She further testified that she was constantly bothered by La Santa. (ECF No. 125 at 314:6–315:6.) Taken together, a reasonable jury could conclude that this conduct amounts to a pervasively hostile-work environment in the form of day-to-day harassment because La Santa harbored discriminatory feelings about Black people. *Costco*, 903 F.3d at 626 ("Actionable discrimination can take other forms, such as demeaning, ostracizing, or even terrorizing the victim because of her sex.") Accordingly, the Court denies Defendant's motion for summary judgment as to Mrs. Morris' hostile-work-environment claim.

### Conclusion

For the reasons discussed above, Defendant's motion for summary judgment [112] is granted in part and denied in part. Specifically, the motion is denied as to Plaintiffs' claims for

hostile-work environment under Title VII, denied as moot as to Plaintiffs' terms or conditions of employment claims, and is otherwise granted. The parties shall file a joint status report within two weeks of the entry of this order, providing proposed pre-trial and trial dates and deadlines and informing the Court whether they wish for a settlement conference to be scheduled.

**SO ORDERED.**                                          **ENTERED: July 25, 2025**

_____

**HON. JORGE ALONSO**

**United States District Judge**

20